## SUPREME COURT.

MATHEW J. STEEN agt. NIAGARA FIRE INSURANCE COMPANY.

*Insurance, fire — Limitation of action by clause in policy — When policy not void by non-occupany of building — When not void by reason of clause as to liens.*

Where the policy of fire insurance contained the following clause: "No suit or action of any kind against this company for the recovery of any claim upon, under or by virtue of this policy, shall be sustainable in any court of law or chancery, unless such suit or action shall be commenced within the term of twelve months *next after the loss or damage shall* occur." By the terms of the policy, proofs of loss were to be furnished in sixty days from the happening thereof. The fire occurred January 11, 1876, and the suit was not commenced till March 3, 1877:

*Held,* that a recovery is not barred by the clause in the policy. The words "after the loss shall occur," refer to the time when the loss shall become a fixed demand, and not to the time of the actual destruction. Limitations of action never commence until the cause of action accrues.

The policy contains a clause which declares, after the enumeration of several other matters: "or if the premises, at the time of insuring, or during the life of this policy, vacant, unoccupied, or not in use, whether by the removal of the owner or occupant, or for any cause, without this company's consent is indorsed hereon, this insurance shall be void, and of no effect." On the application of the insured, the general agents of the defendant wrote in the body of the policy, so as to make a part and portion of the contract, this clause : "The dwelling being unoccupied for a short time, but being in charge of a trusty person living near by, shall be no prejudice to this policy :

*Held,* that the clear effect of the insertion of such a clause in the body of the policy was to modify the contract as originally made; and the one making it void for non-occupancy must be read in connection with the

Steen agt. Niagara Fire Insurance Company.

amendment, and so reading it the policy is not vitiated; for the premises were only temporarily vacant at the time of the fire, and were then "in charge of a trusty person living near by."

*Held*, further, that a declaration of the defendant, by its general agents, when informed of the last vacation of the premises, that the contingency was provided for, would waive the forfeiture, if any existed.

Where the policy contained a clause as to liens, as follows: "In case of assignment, before or after loss, whether of the whole policy or of any interest in it, or of any sale, transfer or change of title in the property insured by this company, or of any undivided interest therein, or the entry of a foreclosure of a mortgage, or the creation of any lien, or the levy of an execution or attachment, or possession by another of the subject insured, without the consent of this company indorsed hereon, this insurance shall immediately cease." Various judgments were recovered against A., to whom the policy was issued, and under one the premises on which the insured dwelling was located was sold by the sheriff to S., the plaintiff. Four days after such purchase the defendant, by its general agent, and by an indorsement made upon the policy, consented to the assignment thereof by A. to S.:

*Held*, that the consent to a transfer was a renewal of the policy, if it had become void by the sale or recovery of the judgments.

*Held*, further, that the recovery of the judgments against A. did not vitiate the policy. He did not, by his own voluntary act, incumber the property, and he must have created the liens to make the policy void.

*Ulster Circuit, January*, 1879.

*Schoonmaker & Linson*, for plaintiff.

*J. E. Dewey*, for defendant.

WESTBROOK, *J.* — This suit was brought upon a fire insurance policy. Without any detailed statement of facts we proceed at once very briefly to discuss the points made.

*First.* Is a recovery barred by the clause in the policy, which reads: "No suit or action of any kind against this company for the recovery of any claim upon, under, or by virtue of this policy shall be sustainable in any court of law or chancery, unless such suit or action shall be commenced within

Steen agt. Niagara Fire Insurance Company.

the term of twelve months *next after the loss or damage shall occur ?*"

The suit was not commenced within a year from the time of the destruction by fire, which was January 11, 1876, but within fourteen months of that time, to wit, on March 3, 1877. By the terms of the policy proofs of loss were to be furnished in sixty days from the happening thereof.

If this question was a new one, I must confess my impressions would be in favor of the defendant, for it seems reasonably clear that the agreement of the parties requires the action to be brought within twelve months from the time of the destruction of the property by the fire, for then the "loss or damage" must "occur." I have not felt myself at liberty, however, to examine or reason upon this point, for the court of appeals in *Hay* agt. *The Star Fire Insurance Company* (19 *Albany Law Journal*, 477, 478) have expressly decided that, "the words 'after the loss shall occur,' refer to the time when the loss shall become a fixed demand, and not to the time of the actual destruction." It is true that in the case referred to, there were facts which would prolong the time for bringing the action, but the court lay down the general principle that, "limitations of actions never commence until the cause of action accrues," and cite *Mayor* agt. *Hamilton Fire Insurance Company* (39 *N. Y.*, 46), the language in which policy was "six months after any loss or damage shall *accrue*," as decisive. Indeed, it would be difficult to distinguish between the two expressions. Loss or damage by fire *accrues* or *occurs* when the property is destroyed, and in common parlance the loss is spoken of as then *accruing* or *occuring ;* either word would be understood to impart the same meaning. The courts have never doubted the literal meaning of either expression, but have declared when either is used in the policy, it should not be taken literally, but that it should be understood to mean "the time when the loss has become a fixed demand, and not the time of the actual destruction."

*Second.* Did the policy become void by reason of the non-occupancy of the building at the time of the fire?

The policy contains a clause which declares, after the enumeration of several other matters, " or, if the premises are, at the time of insuring *or during* the life of this policy, vacant, unoccupied or not in use, whether by the removal of the owner or occupant, or for any cause, *without this ·company's consent is indorsed hereon,* this insurance shall be void and of no effect."

On the 7th day of January, 1875, on the application of the insured, the general agents of the defendant, E. Vail & Son of Poughkeepsie, N. Y., wrote in the body of the policy, so as to make a part and portion of the contract, this clause: " The dwelling being unoccupied for a short time, but being in the charge of a trusty person living near by, shall be no prejudice to this policy. 7th January, 1875. E. Vail & Son."

The clear effect of the insertion of such a clause in the body of the policy was to modify the contract as originally made; and the one making it void for non-occupancy must be read in connection with the amendment, and so reading it, the policy is not vitiated; for the premises were only temporarily vacant at the time of the fire, and were then " in charge of a trusty person living near by."

In addition to this modification of the policy, for the place of the insertion of the clause shows that it was more than a consent to *one* temporary want of occupancy, the defendants, by its general agents, when informed of the last vacation of the premises, declared that the contingency was provided for. This would waive the forfeiture if any existed (*Adams* agt. *Greenwich Fire Insurance Company,* 9 *Hun,* 47; *same case in Court of Appeals,* 70 *N. Y.,* 166).

*Third.* Is the policy void by reason of the clause as to liens? That paragraph declares: " In case of assignment before or after a loss, whether of the whole policy or of any interest in it, or of any sale, transfer or change of title in the property insured by this company, or of any undivided inter-

est therein, or the entry of a foreclosure of a mortgage, or the creation of any lien, or the levy of an execution or attachment, or possession by another of the subject insured, without the consent of this company indorsed hereon, this insurance shall immediately cease."

The party to whom the policy issued was Jonas F. Atkins. Various judgments were recovered against him, and, under one rendered in favor of Robert E. Taylor as assignee in bankruptcy of David L. Atkins, on the 12th day of November, 1875, the premises on which the insured dwelling was located were sold by the sheriff of Ulster county to the plaintiff, Matthew J. Steen.

Four days after such purchase, the defendant, by its general agent and by an indorsement made upon the policy, consented to the assignment thereof by Atkins to the purchaser Steen, and on the same day Atkins did assign to him, the plaintiff. That consent to a transfer was a renewal of the policy if it had become void by the sale or the recovery of the judgments. It is true, it was to be an assignment of the policy subject "to all the terms and conditions therein mentioned and referred to;" but if the alleged forfeiture was to be insisted upon, and not waived, what was there to assign? Something, and not nothing, was to be transferred. This seems to be too plain for argument, and the point is sustained by *Shearman* agt. *The Niagara Fire Insurance Company* (46 *N. Y.*, 526), and *Hooper* agt. *Hudson River Fire Insurance Company* (17 *N. Y.*, 424); *Wolfe* agt. *Security Insurance Company* (39 *N. Y.*, 49); *Carroll* agt. *Charter Oak Insurance Company* (38 *Barb.*, 412).

The recovery of the judgments against Atkins did not vitiate the policy. He did not, by his own voluntary act, incumber the property, and he must have created the liens to make the policy void (*Bailey* agt. *Homestead Fire Insurance Company*, 21 *Albany Law Journal*, 173).

It will be borne in mind also, that after all the acts of Atkins had occurred which are claimed to vitiate the policy,

the company consented to an absolute transfer thereof to the plaintiff. This act makes it a valid policy in his hands.

The result of my examination is, that plaintiff is entitled to judgment.